**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| (1) ALABAMA-QUASSARTE TRIBAL TOWN, Federal-recognized Indian Tribe, | ) ) ) | No. **22-CV-268-GLJ** |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| (2) FIRST NATIONAL BANK AND TRUST COMPANY OF OKMULGEE, | ) ) | |
| (3) WILSON L. YARGEE | ) | |
| (4) ROVENA YARGEE, | ) | |
| (5) TAHLINA NOFIRE | ) | |
| , all Defendants joined individually and in their official capacity for purposes of declaratory relief as may be necessary, and prospective Injunctive Relief only, | ) ) ) ) ) | |
| Defendants. | ) ) | |

# COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

**(Federal Question involving Sovereignty Immunity from Suit by (1) ALABAMA-QUASSARTE TRIBAL TOWN under 25 U.S.C. §503 (Oklahoma Indian Welfare Act) and/or Determining the Extent of Jurisdiction of Former Chief Wilson L. Yargee, Rovena Yargee, Tahlina Nofire over the sovereign activities of AQTT Tribal Town**

Respectfully submitted, SmithAmundsen LLC, Jeffrey A. Risch, OBA #17970, 3815 E Main St Suite A-1, St. Charles, IL 60174, (630)-587-9722.

COMES NOW, Plaintiff, ALABAMA-QUASSARTE TRIBAL TOWN ("AQTT"), a federally recognized sovereign Indian nation, by and through its counsel, and for its causes of action against Defendants, and alleges and states:

## INTRODUCTION

1.  The AQTT is a federally-recognized Native American Indian tribe located in Oklahoma.

Vulnerable members of the tribe receive financial assistance from AQTT for necessary social

services, including but not limited to health care, child welfare, elderly assistance, and utility

1

expenses.  The leadership of the tribe is responsible for managing the social services and ensuring the financial support is delivered to its dependent tribal population.

2.   The AQTT financial accounts are maintained at First National Bank and Trust of Okmulgee ("First National").

3.   As a result of a hostile and unlawful claim of authority by Wilson Yargee ("Yargee"), an impeached tribal chief, First National has placed restrictions on the AQTT accounts which has obstructed the ability of tribal leadership to dispense tribal funds to its dependent members.

4.   While the conflict involving AQTT and Yargee has been addressed within AQTT, an immediate order from this Court is necessary to ensure First National does not honor orders entered by an illegitimate Yargee Court as a basis to distribute AQTT assets to Yargee.

5.   Yargee, ROVENA YARGEE ("Rovena Yargee"), and TAHLINA NOFIRE ("Nofire") claim to have created a tribal town court. This so-called tribal town court was not constitutionally and/or lawfully created under the laws of the ALABAMA-QUASSARTE Constitution. See Copy of Petition and Orders attached hereto as Group Exhibit A.

6.   AQTT seeks a declaration that the so-called "ALABAMA-QUASSARTE TRIBAL TOWN DISTRICT COURT" set up by the Yargee, Rovena Yargee, and Nofire was not constitutionally and/or lawfully created.

7.   AQTT seeks a declaration that any orders from the so-called "ALABAMA-QUASSARTE TRIBAL TOWN DISTRICT COURT" set up by the QUASSARTE TRIBAL TOWN DISTRICT COURT" set up by the Yargee are *void ab initio*. See Group Exhibit A.

## PARTIES, JURISDICTION, AND VENUE

8.   The AQTT is a Federally-recognized Indian tribe organized pursuant to the Oklahoma Indian Welfare Act of June 26, 1936 (49 Stat. 1967) with its Constitution and By-Laws ratified on

January 10, 1939. The AQTT maintains its tribal headquarters in Wetumka, Hughes County, Oklahoma.

9.   The AQTT brings this action to assert and protect its rights and the rights of its citizens.

10. Defendant First National operates as a full service bank with its principal place of business at 610 E 8th St Okmulgee, OK, 74447-5505. First National regularly conducts business in Okmulgee, OK through its main office located at including its main office located at 610 E 8th St Okmulgee, OK, 74447-5505.

11. WILSON L. YARGEE is a former chief of the AQTT who continues to claim that he is the current chief of the AQTT. Upon information and belief, he resides at 3050 N 381 Rd., Wetumka, OK 74883.

12. ROVENA YARGEE is a former second chief of the AQTT who continues to claim that she is the second chief of the AQTT. Upon information and belief, she resides at 3050 N 381 Rd., Wetumka, OK 74883.

13. TAHLINA NOFIRE claims to be a "Chief Judge" of the illegitimate and so-called trial town court and has entered orders against First National. Upon information and belief, she resides at 5180 W 816 Rd Fort Gibson, OK 74434.

14. This Court has jurisdiction to resolve the question of whether the order entered by TAHLINA NOFIRE exceeded their jurisdictional authority.

15. Given that the so-called Tribal Town Court created by WILSON L. YARGEE, and ROVENA YARGEE,, TAHLINA NOFIRE was not constitutionally created, this Court should declare orders entered by this Court to be null and void.

16. AQTT also seeks an order finding that no state or federal court may domestic any orders entered by Yargee's so-called trial town court because such orders are *void ab initio*

17. Preliminary and permanent injunctive relief is necessary from this Court because, unless it is restrained by this Court, Yargee's so-called tribal town court will attempt to domesticate *ultra vires* orders in Oklahoma State Court. See Group Exhibit A.

18. Jurisdiction is conferred by Title **28 U.S.C. §1331** which provides for original jurisdiction of this Court in suits that arise under the Constitution, laws, or treaties of the United States.

19. Jurisdiction is further conferred by Title **28 U.S.C. §1362** which provides for original jurisdiction of all civil actions, brought by any Indian tribe or band with a governing body duly recognized by the Secretary of the Interior, where the matter in controversy arises under the Constitution, laws, or treaties of the United States.

20. The specific issue raised in this action is the sovereign immunity of AQTT, a federally recognized Indian Tribe, under its reorganization pursuant to Title **25 U.S.C. §503**, the Oklahoma Indian Welfare Act, and the supremacy of federal law over any law, decision, or rule of an Indian tribe under the Indian Commerce Clause of the United States Constitution (Article 1, section 8); the Treaty Clause, Article II, section 2, clause 2; or, as may be applicable, the Supremacy Clause of the United States Constitution (Article VI, paragraph 2). AQTT's  federal recognition of sovereignty is supreme and preempts any claim of adjudicative jurisdiction by any other judicial body over the sovereign activities of AQTT. The question of the extent of a tribal court's jurisdiction is a question of federal law. See *Nat'l Farmers Union Ins. Co. v. Crow Tribe of Indians*, 471 U.S. 845, 851-53, 857, 105 S.Ct. 2447 (1985).

21. . As our Supreme Court explained in *National Farmers Union Insurance Companies v. Crow Tribe of Indians*, "whether an Indian tribe retains the power to compel a non-Indian ... to submit to the civil jurisdiction of a tribal court is one that must be answered by reference to federal

law and is a 'federal question' under § 1331." 471 U.S. 845, 852, 105 S.Ct. 2447, 85 L.Ed.2d 818

(1985); see also *Thlopthlocco Tribal Town v. Stidham*, 762 F.3d 1226 (10th Cir. 2014).

22. **VENUE**: The Individual Defendants are individuals who claim to exercise judicial authority

of AQTT and its judiciary, yet act *ultra vires* with respect to their exercise of jurisdiction over AQTT

and First National as complained herein.

23. Defendant First National operates as a full service bank with its principal place of business

at 610 E 8th St Okmulgee, OK, 74447-5505. First National regularly conducts business in

Okmulgee, OK through its main office located at including its main office located at 610 E 8th St

Okmulgee, OK, 74447-5505.

24. Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b) and (c). This Court has

jurisdiction over the subject matter of this action and can acquire *in personam jurisdiction* over all

defendants named herein.

## RELEVANT BACKGROUND

25. Starting in early September of 2021, the Alabama-Quassarte Governing Committee used

their "authority to investigate" alleged acts of Chief Wilson Yargee involving incompetence,

conduct unbecoming of a Tribal Town Officer, and mismanagement and abuse of authority.

26. The AQTT Governing Committee presented its findings of its investigation to the Tribal

membership at their regularly scheduled Town Meeting in October of 2021.  The Tribal Town

Members weighed the evidence presented by the Governing Committee and an overwhelming

majority voted to remove Wilson Yargee from the Office of Chief.

27. This Removal was conducted according to the Alabama-Quassarte Constitution and

according to the AQTT Standing Policy and Rules of Procedure.  A Resolution was passed

documenting this Removal. Attached as Exhibit B is a true and accurate copy of the Resolution.

28. After Yargee was legally removed by the Town members, the Governing Committee, by majority vote, appointed Sam Marshall to fulfill Yargee's unexpired term as Chief.  This process was performed consistent and performed in accordance with Article VII of the Constitution entitled, "Removal from Office and Filling Vacancies."    Attached as Exhibit C is a true and accurate copy of the Resolution appointing Sam Marshall as interim Chief of AQTT.

29. Despite his lawful appointment under the procedures contained in the Alabama-Quassarte Constitution, First National has refused to recognize Chief Sam Marshall and/or his designee as the sole legal representative to the Alabama-Quassarte Tribal Town bank accounts at First National.

30. First National currently maintains the following accounts on behalf of the AQTT with the following respective and approximate balances as of May 31, 2022: (1) Coronovirus Relief Fund- $1,036,390.56, (2) Cares Act- $24,987.07 (as of December 7, 2021), (3) American Rescue Plan Act- $2,830,312.43, (4) Operations-$22,414.25, (5) In-Direct Cost- $926.68, (6) Tribal Revenue- $70,130.84, (7) BIA- $701,202.80, (8) Child Care- $1,619.15, (9) LIHEAP- $0, (10) NAHASDA- TIHD- $0, (11) ICW- $93,754.82, (12) Tribal Transportations- $202,516.23, (13) Smoke Shop, (no account value included??)(14) EDA Capital Account- $1,287.01, (15) EDA Business Operating Account- $2,566.92.

31. All of the accounts referenced in the preceding paragraph were funded by AQTT.

32. First National claims it "is now and has at all times been ready and willing to disburse funds to the person or persons legally entitled to the aforesaid funds but has not been able to do so because of conflicting claims."

33. Specifically, despite his lawful impeachment, Yargee claims he should remain in power in contradiction to procedures expressed in the Alabama-Quassarte Constitution and related tribal governance documents.

34. AQTT is suffering irreparable harm by First National's refusal to tender funds from AQTT bank accounts held at First National.

35. The banks accounts at First National support the following programs, vitally necessary for the well-being of members dependent on tribal social programs: Tribal Revenue funds the Elderly assistance Program, School Clothing Program, Holiday pay and the General Assistance Program, and Funeral Assistance.  In addition,  the Tribe's funds for the AQTT Child Care Center and Child Care home Providers are deposited with First National. The funds in the First National accounts provide LIHEAP funds which pay assistance for residential utilities. NAHASDA-TIHD funds IHBG Cares Act Relocation/Utility Assistance program, BIA Housing Assistance Program, U.S. Treasury Emergency Rental Assistance program, Indian Housing Block Grant Maintenance Assistance Program, Indian Housing Block Grant Housing Assistance program, Appliance Program, ICW funds the Indian Child Welfare Program, Smokeshop funds Tribal Revenue as well as the EDA Account.

36. As a result of First National's refusal to permit access to the funds, the AQTT has been forced to suspend the following programs: Elderly Nutrition Program and elderly assistance program, School Clothing Program, the General assistance program, Child Care Center and Home provider assistance,  LIHEAP, all of Housing assistance, and the Indian Child Welfare Program.

37. AQTT reserves all rights, claims, and protections of its Tribal sovereignty, including immunity from any suit arising under this action. See *Oklahoma Tax Com'n v. Citizen Band Potawatomi Indian Tribe of Oklahoma*, 498 U.S. 505, 509, 111 S.Ct. 905 (1991) ("... a tribe does

not waive its sovereign immunity from actions that could not otherwise be brought against it merely because those actions were pleaded in a counterclaim to an action filed by the tribe.").

38. First National has threatened to release funds to the Individual Defendants because of the orders supposedly entered by the illegitimate Yargee Tribal Town Court.

39. Orders from this illegitimate Yargee Tribal Town Court should be found to be *void ab initio*.

### THE AQTT CONSTITUTION AND THE IMPROPERLY CREATED COURT

40. Yargee and Rovena Yargee claim to have established their own personal kangaroo court (named The Alabama-Quassarte Tribal Town Court and hereinafter referred to as the "Yargee Trial Town Court") headed by a purported judge Nofire.

41. Yargee lacked constitutional or legal authority to establish his own personal court. This so-called court was established in a desperate attempt to remain in power despite his lawful impeachment.

42. In order to establish a lawful and constitutional Alabama-Quassarte Tribal Town District Court, the following legal elements must be satisfied:

    a. The Alabama-Quassarte Constitution must have a provision that specifically states, and allows for the creation of a Tribal court.

    b. If the Alabama-Quassarte Constitution does not have this provision (which it does not), the Constitution must be amended as per Article III of the Alabama-Quassarte By-Laws.  Article III states that, "Amendments… may be proposed by a majority vote of the Governing Committee or by a petition signed by thirty percent (30%) of the adult members of the Town."

    c. The Amendment must be approved by the Secretary of the Interior and then submitted to a referendum vote of the members of the Tribal Town.  The Amendment only becomes effective if approved by a majority vote of Tribal membership.

    d. The legally elected officials of the Alabama-Quassarte must draft and approve  a Tribal Law & Order Code through a Tribal Resolution.

    e. The legally elected officials of the Alabama-Quassarte must draft the Rules of Civil Procedure and the Rules of Criminal Procedure, and they must then be approved through Tribal Resolution.

    f. The Assistant Secretary of the Interior must approve the Tribal Law & Order Code through the issuance of a Determination Letter.

g. The Assistant Secretary of the Interior must approve the Rules of Civil Procedure and the Rules of Criminal Procedure through the issuance of a Determination Letter.

h. The Assistant Secretary of the Interior must approve the overall Tribal Court of the Alabama-Quassarte Tribal Town through the issuance of a Determination Letter.

43. Even if Yargee had not been removed by the Town membership, the requirements set forth in the preceding paragraph have not been satisfied. Therefore, the illegitimate court created by Yargee in an attempt to preserve his power as chief has no legal authority to issue orders and does not legally exist.

44. Under the Alabama-Quassarte Constitution, the Officers of the Tribal Town and their Powers are defined in Article V. A true and accurate copy of the Alabama-Quassarte Constitution is attached hereto as Exhibit D.

45. Under Article V, the Tribal Officers are "the Chief, the Second Chief, the Secretary, the Floor Speaker, the Solicitor, the Chairman of the Governing Committee, and twelve members of the Governing Committee." Further, Article V explains, "The powers of the Town shall be exercised by the Chief with the consent of the Governing Committee."

46. Article V and Article VII (Removal from Office and Filling Vacancies) operate as a necessary and powerful check and balance of powers and authority within the Tribal Town. These Articles protect the Tribal Town from a Chief having too much power or from a Chief who violates the laws of the Tribe. Similarly, these provisions protect the Tribal Town from having an Officer abuse his or her authority or engaging in improprieties. These indispensable Articles operate similar to the way the U.S. Constitution is written to check and balance a powerful president with an equally powerful Legislature.

47. As the constitutionally-appointed interim Chief, First National should take direction from Chief Sam Marshall and from the duly constituted Governing Committee of the AQTT.

48. Under the Alabama-Quassarte Constitution ("Exhibit 1"), the Officers of the Tribal Town and their Powers are defined in Article V.  Article V states that, "The Officers of this Town shall be the Chief, the Second Chief, the Secretary, the Floor Speaker, the Solicitor, the Chairman of the Governing Committee, and twelve members of the Governing Committee."  It goes on to state that, "The powers of the Town shall be exercised by the Chief with the consent of the Governing Committee."  This is a Check and Balance established under the Alabama-Quassarte Constitution to protect the Tribe from a Chief having too much power or from a Chief who violates the laws of the Tribe.  This is very similar to the way the U.S. Constitution is written to check and balance a powerful president with an equally powerful Legislature.

49. Article VII of the Constitution, defines "Removal from Office and Filling Vacancies."  It states that, "Officers may be removed by a majority vote of the members of the Town.  Vacancies in Office shall be filled for the unexpired term by a majority vote of the Governing Committee. "  Both Article V and Article VII are powerful Checks and Balances set up under the Constitution to protect Town Tribal members from abuses or improprieties committed by an Officer such as a Chief.

50. The Alabama-Quassarte Standing Policy and Rules of Procedure define the legal standards of the Town for the operation of all official business conducted by the Governing Committee.

51. Under "Non-Delegated Powers," the Standing Policy and Rules of Procedure give the Governing Committee the legal authority to, "carry out such duties that are implied and inherent, including but not limited to, determining its own rules of procedure, the authority to investigate, subpoena and the authority to hold in contempt."

52. Under "Removal of Tribal Town Officers," the Standing Policy and Rules of Procedure outline the legal procedure necessary to remove an Officer such as a Chief.  It states, "A motion

to 'remove [an Officer] for cause' from Office may be made or presented at any regular Tribal

Town Membership Meeting by any Tribal Town Officer or Tribal Town member." It continues

by stating that, "All removals from Office shall be by majority vote of the Tribal Town members

present at a Tribal Town Membership meeting." This language reinforces Article VII of the

Alabama-Quassarte Constitution.

53. Despite the legal actions taken by the AQTT membership, Wilson Yargee discarded the

Alabama-Quassarte Constitution, refuses to accept the will of the Town membership, and has

created an illegitimate tribal town court in a desperate attempt to retain power.

## STATUTES AND CONSTITUTIONAL PROVISIONS INVOLVED

54. 25 U.S.C.§503. Oklahoma Indian Welfare Act (Section 3) provides as follows:

> Any recognized tribe or band of Indians residing in Oklahoma shall have the right to
> organize for its common welfare and to adopt a constitution and bylaws, under such rules
> and regulations as the Secretary of the Interior may prescribe. The Secretary of the Interior
> may issue to any such organized group a charter of incorporation, which shall become
> operative when ratified by a majority vote of the adult members of the organization voting:
> Provided, however, That such election shall be void unless the total vote cast be at least 30
> per centum of those entitled to vote. Such charter may convey to the incorporated group,
> in addition to any powers which may properly be vested in a body corporate under the laws
> of the State of Oklahoma, the right to participate in the revolving credit fund and to enjoy
> any other rights or privileges secured to an organized Indian tribe under the Act of June 18,
> 1934 (48 Stat. 984) [25 U.S.C.A. § 461 et seq.]: Provided, That the corporate funds of any
> such chartered group may be deposited in any national bank within the State of Oklahoma
> or otherwise invested, utilized, or disbursed in accordance with the terms of the corporate
> charter.

55. United States Constitution, Article I, Section 8, Clause 3, commonly known as the Indian

Commerce Clause, is an enumerated power of the United States Government stated as follows:

> [The Congress shall have power] To regulate commerce with foreign nations, and among
> the several states, and with the Indian tribes;

56. United States Constitution, Article VI, paragraph 2, commonly known as the Supremacy

Clause, is an enumerated power of the United States Government stated as follow:

This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the contrary notwithstanding.

## COUNT I
## Declaratory Judgment

57. The AQTT restates and realleges the preceding paragraphs as if fully stated herein.

58. An actual controversy exists between AQTT and First National as to the ability to control and access the accounts held at First National.

59. An actual controversy exists as to whether the so-called Yargee Tribal Town Court was constitutionally created and whether it is legitimate.

60. As part of its claims for declaratory relief, Plaintiff AQTT seeks a declaration from this Court on the following issues:

  a. The Yargee Tribal Town Court was not constitutionally and/or legally created.
  b. All orders from the Yargee Tribal Town Court are *void ab initio*.
  c. First National should turn over control of the AQTT bank account(s) over to Sam Marshall and/or his designees.
  d. Provide a full accounting of record all funds removed from the AQTT bank accounts since October 1, 2021.
  e. For such other and further orders and judgments and relief as the Court may deem just and proper.

## COUNT II
## Application for Injunctive Relief

61. Plaintiff incorporates all allegations in the preceding paragraphs and further allege as follows:

62. Unless enjoined by the Court, Defendants will continue to exercise unlawful control of over AQTT property in violation of the aforementioned acts and other Federal law.

63. Defendants' unlawful actions are ongoing, and the injuries to AQTT and its citizens constitute irreparable and permanent harm.

64. AQTT has a likelihood of success on the merits of this dispute.

65. There is no adequate and complete remedy at law to stop the Individual Defendants and First National's unlawful actions against Plaintiff given that the health and safety of AQTT citizens is in jeopardy.

66. Future monetary compensation to AQTT for the unlawful restrictions imposed against AQTT property will not provide relief to the AQTT members suffering the immediate injuries associated with the interruption of necessary social assistance programs.

67. AQTT is entitled to a preliminary and permanent injunction pending a hearing  ordering any state court not to domesticate or otherwise honor any orders from the illegitimate Yargee Tribal Town Court before this Court can determine whether the Yargee Tribal Town Court was constitutionally and/or lawfully created.

68. AQTT is entitled to a preliminary and permanent injunction pending a hearing  ordering First National to distribute funds from the AQTT accounts necessary for the health and safety of the AQTT members.

69. AQTT is entitled to a preliminary and permanent injunction pending a hearing ordering First National not to honor any orders entered by the Yargee Tribal Town Court.

70. Plaintiff requests the Court issue a preliminary and permanent injunction restraining First National for its unauthorized hold on AQTT accounts.  Plaintiff will file a separate Verified Motion for Preliminary Injunction and supporting brief after service of this Complaint upon the Defendants.

## COUNT III
## Violations of Federal Law

71. The AQTT, as a federally recognized Indian Tribe organized under the Federal OIWA, and pursuant to its traditional autonomous standing as a Tribal Town, is entitled to sovereign immunity

13

from suit without its consent and in the absence of any abrogation of that consent by Congress and such federal rights and law are supreme over any court decision or practice of illegitimate Yargee Tribal Town Court.

72. The exercise of jurisdiction by Defendants and those acting in concert with them over AQTT and its property is a violation of the AQTT's rights of sovereignty granted federal law under 25 U.S.C. §503, the Oklahoma Indian Welfare Act; and the supremacy of federal law over any law, decision, or rule of an Indian tribe under the Indian Commerce Clause of the United States Constitution (Article 1, section 8); the Treaty Clause, Article II, section 2, clause 2 or; as may be applicable, the Supremacy Clause of the United States Constitution (Article VI, paragraph 2).

73. The actions of the individual defendants and those acting in concert or joint participation with them to subject AQTT to continued adjudication of unlawful orders entered by the Yargee Tribal Town Court is a violation of AQTT's rights of sovereignty granted federal law under 25 U.S.C. §503, the Oklahoma Indian Welfare Act; and the supremacy of federal law over any

## PRAYER FOR RELIEF

Wherefore, AQTT respectfully requests the Court:

1. Enter a judgment and declaration that Chief Sam Marshall and/or his designee shall have immediate and exclusive access and control of the AQTT bank accounts  and ordering First National to provide a full accounting of  all funds removed from the AQTT bank accounts since October 1, 2021.
2. Enter a judgment order First National to return any funds that were unlawfully distributed to the Yargee and the Individual Defendants.
3. Enter judgment, declaration, and a mandatory injunction requiring First National to distribute funds from AQTT accounts such as necessary for the health and safety of the AQTT citizens.
4. Assume jurisdiction of the cause to determine this controversy and set this case down promptly for hearing. (Fed. R. Civ. Pro. 57 provides, "The court may order a speedy hearing of a declaratory-judgment action.")
5. Upon hearing as necessary to secure the federal rights of AQTT, pursuant to 28 U.S.C. §2201-02 and Fed. Rul. Civ. Pro. 57, this Court should declare that AQTT's rights of sovereign immunity under federal law are supreme over any court decision from the illegitimate Yargee Tribal Town Court.

6.  This Court should enter judgment declaring that any and all such orders of the Yargee Tribal Town Court (See Exhibit A) lack jurisdiction and are null and void, including any claim of jurisdiction to affect AQTT's rights to access funds held by First National.

7.  Upon hearing and to preserve the *status quo* this Court should grant Plaintiff a preliminary injunction as to prospective injunctive relief as prayed for herein enjoining Defendants, their agents, or anyone acting in concert or joint participation with them in their individual or official capacity from the exercise of any jurisdiction of AQTT or its funds without the explicit and specific consent of Chief Sam Marshall. (Fed. R. Civ. Pro. 65(d)(2) provides that an injunction binds the following with actual notice: (A) the parties; (B) the parties' officers, agents, servants, employees, and attorneys; and (C) other persons who are in active concert or participation with anyone described in (A) or (B)).

8.  Upon final hearing grant Plaintiff a permanent injunction as to prospective injunctive relief as prayed for herein enjoining Defendants, their agents, or anyone acting in concert or joint participation from exercising any authority or jurisdiction over AQTT's property, including property held by  First National.

9.  The Yargee Tribal Town Court was not constitutionally and/or legally created.

10. All orders from the Yargee Tribal Town Court are *void ab initio*. See *e.g.* Exhibit A.

11. Order First National to provide a full accounting of record all funds removed from the AQTT bank accounts since October 1, 2021.

12. For such other and further orders and judgments and relief as the Court may deem just and proper.

Respectfully submitted,

Jeffrey Scott Sypolt (Pro hac vice forthcoming)
**LAW OFFICES OF SCOTT SYPOLT**
7903 Bayview Road
Wonder Lake, Illinois 60097
scottsypolt@rocketmail.com

/s/ Jeffrey A. Risch
Jeffrey A. Risch OBA #17970
**SMITHAMUNDSEN LLC**
3815 E Main St Suite A-1
St. Charles, IL 60174
Tel: (630)-587-9722
jrisch@smithamundsen.com
*Attorneys for Plaintiff*


Joseph P. Carlasare
(Pro hac vice forthcoming)
Patrick F. Mastrian III
(Pro hac vice forthcoming)
**SMITHAMUNDSEN LLC**
150 North Michigan Avenue, Suite 3300
Chicago, Illinois 60601
Tel: (312) 894-3200
Fax: (312) 894-3210
jcarlasare@smithamundsen.com
pmastrian@smithamundsen.com
*Attorneys for Plaintiff*

## CERTIFICATE OF DELIVERY

I, **Joseph Carlasare**, hereby certify that I delivered a true and accurate copy of this within and foregoing pleading to attorneys for the Defendants at the following address, by U.S. mail and email on  the 22nd day of September, 2022:

First National
c/o Luke Gaither
405 West Trudgeon Street
Henryetta, OK 74437
Okmulgee County
P.O. Box 1090
Henryetta, OK 74437-1090
luke@gaitherlawoffice.com

Wilson L. Yargee
Rovena Yargee
3050 N 381 Rd.,
Wetumka, OK 74883

Tahlina Nofire
5180 W 816 Rd.
Fort Gibson, OK 74434